UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**NICOLE SEXTON,**

      **Plaintiff,**

v.                                              Case No. 8:12-cv-02341-T-30TBM

**CAROLYN W. COLVIN, Acting**
**Commissioner of the United States**
**Social Security Administration,**[1]

      **Defendant.**
_____/

## REPORT AND RECOMMENDATION

The Plaintiff seeks judicial review of the denial of her claim for Social Security disability benefits and Supplemental Security Income payments.  Because the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, I recommend that it be affirmed.

A.

Plaintiff was twenty-nine (29) years of age at the time of her administrative hearing in March 2011.  She stands 5' 5" tall and weighed 273 pounds (down 43 pounds over the last year).  Plaintiff has a high school education and was attending St. Petersburg College at the time of her hearing.  Plaintiff reported past work as a housekeeper, babysitter, cashier, and

---

[1]Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Federal Rule of Civil Procedure 25(d), Ms. Colvin is substituted for Michael J. Astrue as the defendant in this lawsuit.

also working in maintenance and in telemarketing. Plaintiff applied for disability benefits and Supplemental Security Income in June 2009, alleging disability as of April 1, 2009, by reason of pain in her back and legs. Plaintiff's applications were denied originally and on reconsideration.

The Plaintiff next received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ"). The Plaintiff was represented at the hearing by counsel and testified, in essence, that she is unable to work due to pain. At the time of the hearing, she was taking one three hour course at St. Petersburg College. She enjoys school and reading, but is only able to handle one course due to problems with sitting for long and difficulty with concentrating and keeping up with the work. She last worked making jewelry in 2008 and working as a babysitter. She no longer can do such intricate jewelry work because of a loss of feeling in her fingers. She suffers from diabetes and thyroid issues, which she regulates with medication and diet. She claims diabetic neuropathy in her legs and herniated discs in her lower back with sciatica. Her legs are numb and weak and she describes intense, constant low back pain that shoots into her legs. She has not had surgery, but she has had injections for the pain which helped some in the left leg, but not the right. She also claims unexplained pain in her right shoulder, which affects the use of her right arm. In addition, she claims to suffer carpal tunnel syndrome.

By her account, she has bad days when her back goes out on her and she lays down most of the day. This occurs about once a month. On other days, she gets up and tries to walk about and do things around her house. She reads and uses her computer a little. She has a

nine-year-old son who she helps get to school and with whom she tries to do things. She tries to clean the house and grocery shop with the help of her son and a friend. She drives only occasionally, but not without pain or discomfort.

Plaintiff estimated that she can only sit for ten to fifteen minutes before she has to get up. She can stand for about ten to fifteen minutes, but then needs to sit. She can walk for about twenty minutes. On a good day, she can lift a gallon of water. Even on good days, she lies down several hours a day and the need to do this would prevent her from doing any job. (R. 39-61).

The ALJ next took testimony from Irvin Roth, a vocational expert (VE). In pertinent part, he testified on a hypothetical question which assumed a person of Plaintiff's age, education and work experience capable of light exertional work with occasional climbing, balancing, stooping, kneeling, crouching, and crawling, but no climbing ladders, scaffolds, ropes, or at open heights, and with limited sensation in both upper extremities resulting in frequent limitation in fine manipulation. With such limitations, the individual could perform the job of a fast food worker, usher and ticket taker, and office helper. If such individual was limited to sedentary work, with a sit/stand option, she could perform some telemarketing jobs. If such person had to take unscheduled breaks every fifteen minutes for three to five minutes, or would miss two days per month, none of these jobs would be available. If such person were limited to light work, but could only use her arms, hands and fingers 10% of the time, no light work would be available. (R. 62-71).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed herein as necessary. Plaintiff's date last insured for benefits was June 30, 2009.

By his decision of April 26, 2011, the ALJ determined that while Plaintiff has severe impairments related to obesity, lumbar spine spondylosis with radiculopathy, carpal tunnel syndrome, diabetes mellitus and neuropathy, she nonetheless had the residual functional capacity to perform a limited range of light exertional work. Upon this finding and the VE's testimony, the ALJ concluded that Plaintiff could perform jobs available to her in the local and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 22-30). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

B.

Entitlement to Social Security disability benefits and Supplemental Security Income payments requires the claimant establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (quotations omitted). The Commissioner must apply the correct law and demonstrate that she has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citations omitted).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Moore*, 405 F.3d at 1211.

In sum, the scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

C.

The Plaintiff raises three claims on this appeal. Plaintiff urges: (1) that the ALJ rejected the opinion of treating doctor, Dr. Perera, without an adequate basis for rejection; (2) the ALJ improperly gave great weight to the opinions of a nonexamining doctor and a single decision maker; and (3) the ALJ failed to find her hypothyroidism and iron deficiency as severe impairments. (Doc. 15).

By her first claim, she notes that Dr. Perera completed a residual functional capacity (RFC) questionnaire in January 2011 by which Plaintiff was so limited that she could not work. (R. 413-17). Despite the treating relationship, the ALJ gave "little weight" to the opinion, noting, without elaboration, that the opinion was inconsistent with the doctor's own records and the medical record as a whole. (R. 28). Plaintiff urges that this conclusion is unsupported by substantial evidence, and insufficient as the ALJ was obliged to articulate the reasons for his conclusion. Moreover, the record reflecting herniated discs, sacral radiculopathy, lumbar spondylosis and facet tenderness support his RFC assessment. *See* (Doc. 15 at 15-17).

In response, the Commissioner notes that under the applicable standard, even the opinion of a treating doctor may be discounted when the opinion is not well-supported by the medical evidence or is inconsistent with the record as a whole. Contrary to Plaintiff's contention, the decision reflects that the ALJ considered Dr. Perera's records along with his opinion and accorded the opinion little weight because the assessment was at odds with most of the medical evidence and Perera's own records, including the objective clinical findings, notes regarding Plaintiff's daily activities, and treatment notes which reflected conservative

6

treatment, and that Plaintiff was not in acute distress, and exhibited normal gait and stance. Additionally, the doctor's limitations on sitting, standing and walking are at odds with Plaintiff's own statements and her testimony concerning daily activities. Also, treatment notes reflected that medication brought 80% to 95% improvement and that Plaintiff was functional on her regime of medications. The decision also reflects contrary findings in the other medical record, including those from the state agency doctor, which support the ALJ's conclusion to discount Dr. Perera's RFC opinion. In sum, the ALJ properly assessed the whole record to arrive at his RFC assessment and substantial evidence supports his assessment of the medical opinion evidence. *See* (Doc. 18 at 4-10).

In this Circuit, certain rules apply to the consideration of the medical opinions of treating, examining and nonexamining doctors. "Medical opinions are statements from physicians . . . that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). An ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Id.*

When considering a treating physician's opinions, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause for rejecting a treating source's opinion may be found where the treating sources's opinion was not bolstered by the evidence, the evidence

7

supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record. *Phillips*, 357 F.3d at 1240-41 (citing *Lewis*, 125 F.3d at 1440). Further, the Commissioner "must specify what weight is given to treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (citing *Broughton v. Heckler*, 776 F.2d 960, 961-62 (11th Cir. 1985)).

Upon consideration of the decision in light of the medical evidence evaluated therein, I find no basis for a remand on this claim. While it is true that the ALJ discounted the opinions of Dr. Sardha Perera, rendered in January 2011, my review suggests that the limitations set forth in that assessment are not consistent with the doctor's treatment notes nor are they consistent with the other records reviewed. In short, Dr. Perera assessed Plaintiff with severe functional limitations in sitting, standing, walking together with certain postural positions, as well as lifting and carrying limitations, and limitations in grasping and fine manipulation with the fingers and hands. (R. 413-17). In addressing Dr. Perera, the ALJ noted care at Florida Pain Management in 2009, (R. 271-86), as well as later records from this doctor set forth in Exhibits 19F, 20F and 21F. (R. 27-28, 413-90). Thus, the ALJ stated,

> From March to July of 2009, the claimant received treatment from Florida Pain Management for low back pain, lumbago/lumbar spondylosis, lumbar degenerative disc herniation, lumbar radiculopathy and lumbar facet arthropathy. However, in March of 2009, a physical examination of the claimant revealed negative straight leg raises as well as intact motor strength and sensatory functions with no signs of muscle wasting/atrophy or acute distress. In July of 2009, another physical evaluation of the claimant demonstrated a normal gait/stance with no indications of acute distress. It was also noted that the claimant did not experience any muscle spasms or limb weakness. These medical reports from Florida Pain Management indicated that the claimant was physically stable, even with her back

> disorders. In addition, the claimant only received conservative treatment, which seemed to be stabilizing the claimant (Exhibit 6F).
>
> . . .
>
> Sardha Perera, M.D., of Florida Pain Management, treated the claimant from 2009 to 2011, for lumbar spine spondylosis with radiculopathy, lumbar disc degeneration and a bulging lumbar disc. However, Dr. Perera mostly observed that the claimant was not in any acute distress and reported that the claimant exhibited a normal gait/stance with no limb weakness. On numerous occasions, Dr. Perera noted that the claimant performed housework and that the claimant did not experience any adverse medication side-effects. In addition, the claimant received only conservative treatment from Dr. Perera. On January 24, 2011, Dr. Perera completed a physical residual functional capacity evaluation on the claimant. Dr. Perera concluded that the claimant was rarely able to lift/carry less than ten pounds and that the claimant was able to stand/walk/sit less than two hours with restrictions in performing postural activities, reaching, handling, fingering and moving her head/neck. Dr. Perera also determined that the claimant needed a sit/stand option; that the claimant would require unscheduled breaks; that the claimant's pain would constantly interfere with the claimant's concentration and that the claimant would miss work two days per month (Exhibits 19F, 20F and 21F). However, the undersigned assigns little weight to Dr. Perera's medical opinions since they are inconsistent with Dr. Perera's medical records and with the majority of the medical record as a whole.

(R. 27-29). By the ALJ's review of these records, they simply did not support the rather over-the-top limitations assessed by Dr. Perera. This conclusion has to be read in the light of the ALJ review of the other medical record as well. And, by my consideration of Dr. Perera's records dating back to 2009, as well as the other records cited in the opinion, I am obliged to find that the ALJ's conclusion is supported by substantial evidence and adequate under the applicable standard to permit him to discount the treating doctor's opinion. In this regard, Plaintiff urges that the ALJ was obligated to say more about why he discounted this assessment, but I find the decision sufficiently clear that the ALJ's review of the medical

9

evidence did not reveal conditions that imposed the limitations ultimately assessed by Dr. Perera. A review of that record supports that while Plaintiff suffered low back limitations, they were not nearly as limiting as ultimately assessed by Dr. Perera. Indeed, these reports reflect conservative treatment, effective pain control, some limitations in range of motion, swelling of the feet, but generally no limb weakness. Plaintiff fails to demonstrate otherwise by reference to any specific findings from Dr. Perera's records or those of any other physician which would dictate that the ALJ was obligated to credit Dr. Perera's assessment.

Insofar as Plaintiff suggests this error results in an accurate assessment of her residual functional capacity (RFC), the regulations dictate that in evaluating a claimant's RFC, the ALJ is obliged to consider all of the claimant's impairments, including subjective symptoms such as pain. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The assessment is based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 416.945(a)(1); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Lewis*, 125 F.3d at 1440. Plaintiff fails to show that her RFC assessment was not made in accordance with these standards. Moreover, in the end, the final responsibility for deciding a claimant's RFC is with the ALJ, not the medical provider. 20 C.F.R. §§ 404.1527(d). Here, Plaintiff fails to demonstrate from this record support for greater limitations than assessed by the ALJ.

By her second claim, Plaintiff argues further that the ALJ erred in giving great weight to the RFC assessments of a nonexamining doctor, (R. 349-56), and from a single decision maker, (R. 306-13). She urges that these opinions were not entitled to significant weight,

10

especially when the opinions were given without the benefit of all the medical record. In that regard, she notes that there were four significant medical exhibits filed after the hearing in March 2011. *See* (Doc. 15 at 17-18).

In response, the Commissioner urges that even in light of the later filed evidence, the ALJ properly gave great weight to the opinion evidence from nonexamining doctor, Ronald Kline, M.D., (R. 349-56). Here, in addition to considering Dr. Kline's opinion, the ALJ considered all the other evidence, including the four exhibits cited by Plaintiff, and arrived at a RFC which was slightly more limiting than that assessed by Dr. Kline. The duty to assess the RFC lies with the ALJ, and here, the relevant medical record provides substantial evidence for the ALJ's assessment. *See* (Doc. 18 at 10-13).

Plaintiff is correct to the extent that the ALJ appears to have credited the opinion of a single decision maker. This opinion was entitled to no weight. *See Siverio v. Comm'r of Soc. Sec.*, 461 F. App'x 869, 871 (11th Cir. 2012).[2] There, the court reversed the Commissioner's decision and remanded the case for reconsideration of the claimant's residual functional capacity because the ALJ erroneously assumed a single decision maker was a physician; the ALJ accorded "significant weight" to that opinion; and the single decision maker's opinion was the only evidence supporting the ALJ's RFC determination. *See id.* Here, however, the evidence from this decision maker is not the only evidence supporting the RFC assessment for a limited range of light work, and thus, this error is no cause to reverse and remand the decision.

---

[2]Pursuant to Eleventh Circuit Rule 36-2, unpublished opinions are not considered binding precedent, but may be cited as persuasive authority.

As for the credit afforded the opinion of Dr. Kline, the ALJ, having properly discounted the functional limitations imposed by Dr. Perera, was free to credit this assessment for light work with additional postural limitations. This is especially true where this assessment was also not the sole basis for the RFC assessment. As stated by the ALJ, such assessment served to buttress his conclusion concerning the Plaintiff's RFC, but it was not the only evidence considered. As discussed above and as urged by the Commissioner, the ALJ's RFC assessment was based on a review of the whole of the record, including the four later filed exhibits referenced by counsel in his argument. Again, I am obliged to conclude that the whole of the record supports the conclusion for a limited range of light exertional work and Plaintiff simply fails to demonstrate with any specifics an error in this conclusion.

Finally, Plaintiff summarily argues that the ALJ erred in not finding her diagnosed hypothyroidism and iron deficiency anemia to be severe impairments. Plaintiff urges, without citation to any authority, that fatigue can affect a claimant's memory and ability to concentrate, and thus, the Court should find these conditions to be severe impairments and remand the decision for further consideration. *See* (Doc. 15 at 18).

On this claim, the Commissioner denies that the record demonstrates that her hypothyroidism or iron deficiency anemia were severe impairments. In any event, the ALJ made no error at step two of the evaluation process in this regard because the ALJ otherwise credited Plaintiff with a number of severe impairments. In sum, Plaintiff's diagnoses for hypothyroidism and iron deficiency anemia do not establish that she was limited by the same, and here, there was a paucity of evidence showing that either condition was severe. *See* (Doc. 18 at 13-15).

Insofar as the Plaintiff urges error at step two of the evaluation process, the claim is without merit. At step two of the five-step evaluation process prescribed by the regulations, the ALJ is called upon to determine whether a claimant's impairments are severe. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). In application, this inquiry is a "threshold" inquiry. It allows only claims based on the slightest abnormality to be rejected. *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984). However, "the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement at step two." *See Jamison v. Bowen,* 814 F.2d 585, 588 (11th Cir. 1987). Thus, "[e]ven if the ALJ erred in not indicating whether [a condition] was a severe impairment, the error was harmless because the ALJ concluded that [claimant] had a severe impairment: and that finding is all that step two requires." *See Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x. 823, 824-25 (11th Cir. 2010).

Insofar as Plaintiff would claim error at any other step in the evaluation process, she fails to demonstrate such error. As urged by the Commissioner, mere diagnosis of a condition alone does not reveal the extent to which the condition limits the claimant's ability to work. *See Moore*, 405 F.3d at 1213 n.6. Here, while there is reference to these conditions in reports from Bayfront Family Medicine Center, there is no corresponding showing of how the conditions affected her capacity for work, if at all, and Plaintiff makes absolutely no showing to the contrary.

13

D.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, and I recommend that it be affirmed. I further recommend that the Clerk be directed to enter Judgment in favor of the Defendant and to close the file.

Respectfully submitted this
26th day of November 2013.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6.

Copies furnished to:
The Honorable James S. Moody, Jr., United States District Judge
Counsel of Record